**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 0 3 2016

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

# UNITED STATES DISTRICTCOURT
## EASTERN DISTRICT OF ARKANSAS
### LITTLE ROCK DIVISION

**BRANDON SCROGGIN**

**PLAINTIFF**

**V.**                                   CASE NO. 4:16cv121 - BRW

**PINNACLE CREDIT SERVICES, LLC**                **DEFENDANT**

## COMPLAINT

Comes now the Plaintiff, Brandon Scroggin (hereinafter "Scroggin"), and for his Complaint against Defendant Pinnacle Credit Services LLC (hereinafter "Pinnacle"), and respectfully states as follows:

### INTRODUCTION

Plaintiff brings this Complaint seeking statutory, actual, and punitive damages, as well as attorney fees and costs, for violations of the *Fair Debt Collection Practices Act (hereafter "FDCPA") § 15 U.S.C. 1692 et seq., Arkansas Fair Debt Collection Practices Act (hereafter "AFDCPA") § 17-24-101 et seq., Arkansas Deceptive Trade Practices Act (hereafter "ADTPA") A.C.A. §§ 4-88-101 through 4-88-115,* and the *Fair Credit Reporting Act 15 USC § 1681 et seq.*

### JURISDICTION AND VENUE

1.    Jurisdiction in conferred on this Court pursuant to *15 U.S.C. § 1692k(d); A.C.A. § 17-24-512(d); A.C.A. § 4-88-113(f); 15 USC § 1681p;* and *28 U.S.C. § 1331.*

2.    Venue is proper as all alleged conduct took place while the Plaintiff was residing in North Little Rock, Arkansas.

This case assigned to District Judge Wilson
and to Magistrate Judge Kearney

## PARTIES

3.     Scroggin is an individual, natural person, and a consumer, residing in North Little Rock, Arkansas; and was an "individual", "natural person", and a "consumer" at all times as alleged in this Complaint.[1]

4.     Pinnacle, located at 7900 HWY 7, Suite 100, St. Louis Park, MN 55426, is a "debt collector", in so far as debt collector is defined pursuant to *15 U.S.C. § 1692a(6)* and *A.C.A. § 17-24-502(5)(A)*,[2] a "person" as defined pursuant to the *A.C.A. § 4-88-102(5)*[3], and a furnisher of information to consumer credit reporting agencies.[4]

## RELEVANT PRECEDENT AND STATUTORY STRUCTURE OF THE FDCPA AND THE AFDCPA

5.     Scroggin incorporates by reference and re-alleges paragraphs (1) through (4).

6.     "The purpose of the FDCPA is to `eliminate abusive debt collection practices by debt collectors,' ... and debt collectors are liable for failure to comply with `any provision' of the Act." Richmond v. Higgins, 435 F.3d 825, 828 (8th Cir.2006) (quoting 15 U.S.C. §§ 1692(e), 1692k(a)) (internal citations omitted).[5]

---

[1]  Pursuant to *15 U.S.C. § 1692(a)(3) & A.C.A. § 17-24-502(2)*, a "consumer" means any natural person obligated or allegedly obligated to pay any debt.  Pursuant to *15 U.S.C. § 1681a(c)*, a consumer means an individual; pursuant to *15 U.S.C. § 1681a(b)* the term "person" means an individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity.

[2]  A "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  *15 U.S.C. §1692a(6) & A.C.A. § 17-24-502(5)(A)*.

[3]  *A.C.A. § 4-88-102(5)* defines a person as, an individual, organization, group, association, partnership, *corporation*, or any combination of them.

[4]  Pinnacle is a collection agency that is licensed by the Arkansas State Board of Collection Agencies, pursuant to the Arkansas Collection Agency Act, to conduct the business of a collection agency in the state of Arkansas.  No private right of action exists under the Arkansas Collection Agency Act; Scroggin has filed a complaint against Pinnacle directly with investigator Janet Wilson of the Arkansas State Board of Collection Agencies.

[5]  *A.C.A. § 17-24-512(a)(1)*

7.     Whether conduct violates the FDCPA is to be determined by analyzing the conduct from the perspective of the least sophisticated consumer.  Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001)(quoting, Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000).

8.     A debt collector who misrepresents the character, amount, or legal status of any debt violates the FDCPA. *15 U.S.C. § 1692e(2)(A) & A.C.A. § 17-24-506(a).*

9.     Debt collectors may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  *15 U.S.C. § 1692e & A.C.A. § 17-24-506(a).*

10.     A debt collector is not allowed to use any unfair or unconscionable means in the connection with the collection of any debt.  *15 U.S.C. § 1692f & A.C.A. § 17-24-507(a).*

11.     The bona fide error defense is limited to clerical errors.  Picht v. Jon R. Hawks, Ltd., 236 F.3d 446, 451 (8th Cir. 2001).

12.     The FDCPA's bona fide error defense does not shield a debt collector from liability when it relies on information from the creditor.  Owen v. LC. System, Inc., 629 F.3d 1263 (11th Cir. 2011).[6]

### STATUTORY STRUCTURE OF THE ADTPA

13.     Scroggin incorporates by reference and re-alleges paragraphs (1) through (12).

14.     Engaging in any unconscionable, false or deceptive act or practice in business, commerce or trade violates the ADTPA. *A.C.A. § 4-88-107(a).[7]*

---

[6] See also, Jerman v. Carlisle, McNellie, Rini, Kramer & Ulnch LPA, United States Supreme Court, No. 08-1200, 130, 1605; 176 L Ed. 2D 519; 2010 Lexis 3480 (April 21, 2010)("This case presents the question whether the "bona fide error" defense applies to a violation resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA.  **"[W]e conclude it does not."**) (emphasis added).

## STATUTORY STRUCTURE OF THE FCRA

15.     Scroggin incorporates by reference and re-alleges paragraphs (1) through (14).

16.     The FCRA prohibits information furnishers from providing information to a Credit Reporting Agency (CRA) that they know or have reasonable cause to believe is inaccurate. *15 U.S.C. § 623(a)(2).*

## FACTS COMMON TO ALL COUNTS

17.     Scroggin incorporates by reference and re-alleges paragraphs (1) through (16).

18.     On or around August of 2015, Scroggin checked his credit reports and noticed that Pinnacle was reporting to Scroggin's reports that Scroggin owed $285.00 to Pinnacle for an alleged defaulted debt to Verizon Wireless.

19.     On or about September 2015 through February of 2016, Scroggin, knowing he did not have any outstanding obligation to Verizon or Pinnacle, disputed Pinnacle's negative reporting seven different times to the credit reporting agencies.

20.     Each dispute by Scroggin was verified by Pinnacle as being accurate reporting by Pinnacle.

21.     On or about November 2015 through February of 2016, Scroggin sent written disputes directly to Pinnacle.   In one dispute Scroggin's letter set out in great detail why Pinnacle's reporting was inaccurate.

22.     Pinnacle refused to respond to Scroggin's disputes and refused to remove its negative reporting from Scroggin's credit reports.

---

[7] The Arkansas Supreme Court has interpreted this language as a broad catch-all provision that encompasses conduct defined as deceptive under other substantive areas of law. *See, e.g., Bryant, 336* Ark. at 295-97, 985 S.W.2d at 302-03.

23.     On or around January 6, 2006, Scroggin filed a complaint against Pinnacle with the Consumer Financial Protection Bureau.  Scroggin's dispute went into great detail why Pinnacle's reporting was inaccurate and illegal and was not simply a general denial dispute.

24.     On or about January 26, 2016, Pinnacle respond to the Consumer Financial Protection Bureau that they could not locate the account Scroggin had disputed.

25.     The same day Pinnacle responded to the Consumer Financial Protection Bureau it could not locate an account for Scroggin, Pinnacle verified their reporting to Equifax as accurate and that Scroggin owed the debt Pinnacle alleged Scroggin owed.

26.     On or around February 1, 2016, Scroggin was advised by Highland Pointe Apartments in Little Rock Arkansas, that Scroggin would have to pay the debt to Pinnacle before he would be allowed to rent, because no outstanding telephone or utility bills were allowed on a new tenant's credit report.

27.     When Scroggin explained he was in a dispute about the alleged debt, he was advised a month's additional deposit would be required to rent,[8] if by the time Scroggin moved in the debt from Pinnacle remained on his credit reports.

28.     From November 2015 through February 2016, Scroggin was denied credit three different times.

29.     Each time Scroggin's alleged debt to Pinnacle was verified by Pinnacle as accurate, Scroggin became angry, frustrated, stressed, suffered anxiety, experience loss of appetite and sleep, and suffered emotional distress.

30.     On or about February 5, 2016, Scroggin received a written communication from Verizon Wireless corporate offices, confirming that Scroggin did not owe the debt Scroggin had disputed; that Verizon had made an error and opened two accounts for Scroggin; that Verizon

---

[8] Scroggin was advised an additional deposit of $985.00 would be required.

was refunding Scroggin money that he had paid which Scroggin did not owe; that Verizon was

sorry for selling a debt Scroggin did not owe; that Verizon was attempting to buy the debt back

from Pinnacle; and that Verizon was doing everything in their power to correct Scroggins' credit

reports.

## COUNT I: VIOLATIONS OF THE FDCPA

31.    Scroggin incorporates by reference and re-alleges paragraphs (1) through (30).

32.    Pinnacle communicating to the credit reporting agencies that Scroggin owed a debt

he does not owe violates the FDCPA, specifically *15 U.S.C. § 1692e(2)(A),* as Pinnacle

misrepresented the legal status of the account Pinnacle was reporting.[9]

33.    Pinnacle's communicating to the credit reporting agencies[10] were also communications

to Scroggin that he owed a debt he did not owe.[11] Such conduct violates the FDCPA, as the

communications to Scroggin were materially false and deceptive thereby violating *15 U.S.C. §*

*1692e.*

34.    Pinnacle ignoring the numerous disputes sent directly to them by Scroggin, that

Scroggin did not owe the debt Pinnacle was reporting to Scroggins' credit reports, and why, is an

---

[9] The FDCPA's bona fide error defense does not shield a debt collector from liability when it relies on information from the creditor.  Owen v. LC. System, Inc., 629 F.3d 1263 (11th Cir. 2011).

[10] Edeh v. Midland Credit Mgmt., Inc WL 3893604 (D. Minn. Sept 29, 2010)(" The court has learned through its work on countless FDCPA cases that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver")).

[11] Davis v. Trans Union, L.L.C., 526 F. Supp. 2d 577 (W.D. N.C. 2007)("Reporting to credit bureaus is a communication within the FDCPA)); see also, Banks v. Ford Motor Credit, 2005 WL 43981 (N.D. Tex. Jan. 7, 2005)("rejecting the argument that reporting to the credit bureau was not a communication to the consumer and was not debt collection activity")).

action(s) taken by Pinnacle directed toward Scroggin and violates *15 U.S.C. § 1692f* because such conduct is unfair and/or unconscionable.[12]

35.     Pinnacle violated the FDCPA, *15 U.S.C. §§ 1692f, 1692e,* when they misrepresented to the Consumer Financial Protection Bureau it could not locate Scroggin's account while on the same day verifying Scroggin's account with the credit reporting agencies.  This was a material misrepresentation to a third party that directly impacted Scroggin negatively, because Scroggin did not owe the debt and Pinnacle refused to delete from Scroggins' consumer credit reports.[13]

36.     Pinnacle's inaccurate reporting to Scroggins' credit reports violate the Fair Credit Reporting Act, specifically *15 U.S.C. § 623(a)(2).*[14]  Debt collection conduct against Scroggin which violates the FCRA is a *per se* violation of the FDCPA, specifically, *15 U.S.C. §§ 1692f, 15 U.S.C. § 1692e.*

## COUNT II: VIOLATIONS OF THE AFDCPA

37.     Scroggin incorporates by reference and re-alleges paragraphs (1) through (36).

38.     Pinnacle communicating to the credit reporting agencies that Scroggin owed a debt he does not owe violates the AFDCPA, specifically, *A.C.A. § 17-24-506(a)* as Pinnacle misrepresented the legal status of the account Pinnacle was reporting.

39.     Pinnacle, communicating to the credit reporting agencies were also communications to Scroggin that he owed a debt he did not owe.  Such conduct violates the AFDCPA, as the

---

[12] "Statutory proscriptions using general terms such as unfairness are to be given effect by considering public values beyond simply those enshrined in the letter or encompassed in the spirit of the statute."  See, Federal Trade Commission v. Sperry & Hutchinson Co., 405 U.S. 233 S. Ct. (1972).

[13] "We are unwilling to adopt a broad ruling that false statements not made directly to a consumer debtor are never actionable under § 1692e. See, *Hemmingsen v. Messerli & Kramer, PA*, 674 F. 3d 814 (8th Cir. 2012).

[14] *15 U.S.C. § 623(a)(2)* prohibits information furnishers from providing inaccurate information to a credit reporting agency.

communications to Scroggin were materially false and deceptive thereby violating A.C.A. *§ 17-24-507(a)*.

40.    Pinnacle's inaccurate reporting to Scroggins' credit reports violate the Fair Credit Reporting Act, specifically *15 U.S.C. § 623(a)(2)*.    Debt collection conduct against Scroggin which violates the FCRA is a *per se* violation of the AFDCPA, specifically, *A.C.A. §§ 17-24-506(a), 17-24-507(a)*.

### COUNT III: VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

41.    Scroggin incorporates by reference and re-alleges paragraphs (1) through (40).

42.    Pinnacle violated the FCRA, specifically *§ 1681s-2(b)ii*,[15] because Pinnacle failed to conduct a reasonable investigation of Scroggins' numerous disputes made directly to the consumer credit reporting agencies, and after directly to the credit reporting agencies the disputes Scroggin then made directly to Pinnacle.  And, if Pinnacle would have conducted a reasonable investigation, based on the detailed and factual information Scroggin had provided to Pinnacle, a reasonable investigation would have led to a reasonable cause to believe that the information Pinnacle was reporting was inaccurate.[16]

43.    Based on the fact Pinnacle refused: (a) to respond to Scroggins' numerous disputes made directly to the credit reporting agencies by correcting its inaccurate reporting, (b) respond to disputes made directly to Pinnacle by Scroggin by correcting its inaccurate reporting, (c) refused to conduct an investigation of Scroggin's Consumer Financial Protection Bureau complaint, and (d) the fact Pinnacle is a debt buyer that could not have originated that alleged debt; and, therefore

---

[15] A person shall not furnish information relating to a consumer to any consumer reporting agency if the information, is in fact, inaccurate.

[16] *15 U.S.C. § s-2 (a)(D)* defines "reasonable cause to believe that the information is inaccurate" as "[h]aving specific knowledge, other than solely allegations by the consumer, that would cause a **reasonable person** [emphasis added] to have substantial doubts about the accuracy of the information.

could have had no personal first-hand knowledge if Scroggin's alleged debt was in fact legally owed or not, yet continued to report the alleged debt in a negative manner to Scroggins' credit reports while ignoring all information to the contrary that its reporting was accurate, makes Pinnacle's violations of the FCRA intentional and willful and subjects Pinnacle to punitive damages.[17]

## COUNT IV: VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

44.     Scroggin incorporates by reference and re-alleges paragraphs (1) through (43).

45.     The Arkansas Deceptive Trade Practices Act, A.C.A. *§ 4-88-107(a)* contains a non-exhaustive list of conduct that violates the ADTPA that states in part:

> Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following: (10) Engaging in any other unconscionable, **false, or deceptive act** [emphasis added] or practice in business, commerce, or trade.

> Emphasis added.

46.     Pinnacle's false and deceptive reporting to Scroggins' credit reports violates the ADTPA.

47.     Pinnacle's false and deceptive response to the Consumer Financial Protection Bureau violates the ADTPA.

48.     Pinnacle's violations of the FDCPA, AFDCPA, and the FCRA are all *per se* violations of the ADTPA.

## DAMAGES AND PRAYER FOR RELIEF

49.     Scroggin incorporates by reference and re-alleges paragraphs (1) through (48).

---

[17] The threat of punitive damages under the FCRA is the primary factor deterring erroneous reporting by the reporting industry. See, Brim v. Midland Credit Mgmt. Inc., 795 F.Supp.2d 1255 (N.D. Ala. 2011).

50.     As it relates to statutory damages under the FDCPA, the Act states, "Any debt collector who fails to comply with any provision of the Act, with respect to any person, is liable to such person for statutory damages up to $1,000.00." *15 U.S.C. 1692k(a)(2).*

51.     Scroggin prays for statutory damages pursuant to the FDCPA in the amount of $1,000.00.

52.     As it relates to actual damages under the FDCPA, the Act states, "Any debt collector who fails to comply with any provision of the Act, with respect to any person, is liable to such person for actual damages." *15 U.S.C. § 1692k(a)(1).*

53.     Scroggin prays for the actual damage of the increase in his rental deposit of $985.00.

54.     Scroggin prays for the actual damage of emotional distress in the amount of $10,000.00.[18]

55.     As it relates to statutory damages under the AFDCPA, the Act states, "Any debt collector who fails to comply with any provision of the Act, with respect to any person, is liable to such person for statutory damages up to $1,000.00." *A.C.A. § 17-24-512(a)(1).*

56.     As it relates to actual damages under the AFDCPA, the Act states, "Any debt collector who fails to comply with any provision of the Act, with respect to any person, is liable to such person for actual damages. *A.C.A. § 17-24-512(a)(1).*

57.     Scroggin prays for the actual damage of an increase in his rental deposit of $985.00.

---

[18] "Actual damages include damages for personal humiliation, embarrassment, mental anguish and emotion distress. There is no fixed standard or measure in the case of intangible items such as humiliation, embarrassment, mental anguish or emotion distress. Mental and emotional suffering and distress pass under various names such as mental anguish, nervous shock and the like. It includes all highly unpleasant mental reactions such as fright or grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. The law does not set a definite standard by which to calculate compensation for mental and emotional suffering and distress. Neither is there any requirement that any witness express an opinion about the amount of compensation that is appropriate for the kind of law." McCollough v. Johnson, Rodenburg & Lauinger, LLC, ___ F.3d ___, 2011 WL 746892 (9th Cir. 2011). [It is noteworthy The Honorable Sandra Day O'Connor, Associate Justice of the United States Supreme Court (Ret.), was sitting by designation pursuant to 28 U.S.C. § 294(a)].

58.     Scroggin prays for the actual damage of emotional distress in the amount of $10,000.00.

59.     As it relates to damages under the FCRA, the Act states, "A consumer who demonstrates that a furnisher was negligent with respect to a consumer's disputed information is entitled to actual damages." *FCRA §1681o.*

60.     Scroggin prays for actual damages in the amount of $985.00 for an increase in Scroggin's required deposit to rent an apartment.

61.     Scroggin prays for 10,000.00 in emotional distress under *FCRA §1681o.*

62.     *FCRA §1681n* states:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000...such amount of punitive damages as the court may allow; and in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

63.     Scroggin's Complaint states a prima facie claim that Pinnacle's violations of the FCRA were willful violations of the Act.

64.     Scroggin prays for statutory damages[19] of $1,000.00 per willful[20] violation of the FCRA under *§1681n*, in the amount of $78,000.00, which is $1,000.00 per month and per credit report from December 2013 through February 2016.

---

[19] Statutory damages are in effect bounties—means of inducing private persons to enforce a regulatory law.  See, Redman v. RadioShack Corp., 768 F.3d 622 (7th Cir. 2014).

[20] To act "willfully" is, for purposes of civil law, to engage in conduct that creates "an unjustifiably high risk of harm that is either known **or so obvious that it should be known**," Farmer v. Brennan, 511 U.S. 825, 836 (1994). Furthermore, Scroggin has information and belief that discovery and depositions will reveal that Pinnacle's bill of sale and forward flow agreement with Pinnacle will contain disclaimers that the information being sold to Pinnacle is not guaranteed to be accurate and that Verizon sells the information to Pinnacle "as is" with no warranties.

65.    Scroggin prays for punitive damages under the FCRA, in the amount of $225,000.00, for Pinnacle's numerous and willful violations of the FCRA.

66.    As it relates to damages pursuant to the Arkansas Deceptive Trade Practices Act,[21] Scroggin seeks actual and punitive damages in an amount determined by a jury.

67.    Scroggin prays for a reasonable attorney's fee as determined by the Court and for the costs in bringing this Complaint.

68.    Scroggin prays for any other relief the Court deems just and proper.

## JURY TRIAL DEMAND

69.    Scroggin incorporates by reference and re-alleges paragraphs (1) through (68).

70.    Scroggin demands trial by jury.

Respectfully Submitted,

Victoria Leigh
LEIGH LAW PLLC
Attorney for Plaintiff
P.O. Box 21514
Little Rock, AR 72211
(501) 227-7627 Office
(501) 227-7628  Facsimile
v@leighlaw.com

---

[21] A private right of action under the ADTPA lies in § 4-88-113.